UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LORIE ANN MUSCLOW,

         Plaintiff,

                Case # 17-CV-6001-FPG

v.

                DECISION AND ORDER

NANCY A. BERRYHILL,[1] ACTING
COMMISSIONER OF SOCIAL SECURITY,

         Defendant.

## INTRODUCTION

   Lorie Ann Musclow brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Acting Commissioner of Social Security that denied her application for disability insurance benefits ("DIB") under Title II of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

   Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 11, 14. For the reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings.

## BACKGROUND

   On April 16, 2013, Musclow applied for DIB with the Social Security Administration ("the SSA"). Tr.[2] 162-65. She alleged disability since September 19, 2012 due to a heart condition, a sleep disorder, a hiatal hernia, irritable bowel syndrome, anxiety, and depression. Tr. 182. On February 17, 2015, Musclow and a vocational expert ("VE") appeared and testified at a hearing

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security and is therefore substituted for Carolyn W. Colvin as the defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).

[2] References to "Tr." are to the administrative record in this matter.

1

before Administrative Law Judge John P. Costello ("the ALJ"). Tr. 32-65. At the hearing, Musclow amended her alleged disability onset date to February 28, 2013. Tr. 36. On April 16, 2015, the ALJ issued a decision finding that Musclow was not disabled within the meaning of the Act. Tr. 13-22. On November 14, 2016, the Appeals Council denied Musclow's request for review. Tr. 1-7. Thereafter, Musclow commenced this action seeking review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71

(1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

**I.      The ALJ's Decision**

The ALJ's decision analyzed Musclow's claim for benefits under the process described above. At step one, the ALJ found that Musclow had not engaged in substantial gainful activity since the amended alleged disability onset date. Tr. 15. At step two, the ALJ found that Musclow has the following severe impairments: congestive heart failure, chronic obstructive pulmonary disease, anxiety, and depression. *Id.* At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal any Listings impairment. Tr. 15-17.

Next, the ALJ determined that Musclow retains the RFC to perform light work[3] with additional limitations. Tr. 17-20. Specifically, the ALJ found that Musclow can occasionally climb stairs, but cannot climb ladders or scaffolds, and that she is limited to simple tasks and low stress work that involves only occasional exercise of judgment. Tr. 17.

At step four, the ALJ determined that this RFC prevents Musclow from performing her past relevant work. Tr. 20. At step five, the ALJ relied on the VE's testimony and found that Musclow can adjust to other work that exists in significant numbers in the national economy given her RFC, age, education, and work experience. Tr. 20-21. Specifically, the VE testified that Musclow can work as a laundry sorter and photo machine operator. Tr. 21. Accordingly, the ALJ concluded that Musclow was not "disabled" under the Act. Tr. 21-22.

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

**II.     Analysis**

Musclow argues that remand is required because the ALJ violated the treating physician rule.[4] ECF No. 11-1 at 13-17; ECF No. 15.  Specifically, Musclow asserts that the ALJ did not provide "good reasons" for discounting the opinions of her treating physician Muhammad Cheema, M.D.

**A.     Treating Physician Rule**

The "treating physician rule" is "a series of regulations set forth by the Commissioner . . . detailing the weight to be accorded a treating physician's opinion." *De Roman v. Barnhart*, No. 03 Civ. 0075 (RCC) (AJP), 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003) (citing 20 C.F.R. § 404.1527).  Under this rule, the ALJ must give controlling weight to a treating physician's opinion when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003).  While an ALJ may discount a treating physician's opinion if it does not meet this standard, the ALJ must "comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); *see also* 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion.").

Even when a treating physician's opinion is not given "controlling" weight, the ALJ must still consider several factors in determining how much weight it should receive.  The ALJ must consider "the length of the treatment relationship and the frequency of examination; the nature and

---

[4] Musclow advances another argument that she believes warrants reversal of the Commissioner's decision. ECF No. 11-1 at 17-19.  However, the Court will not address that argument because it disposes of this matter based on the ALJ's violation of the treating physician rule.

5

extent of the treatment relationship; the relevant evidence, particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues." *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (quotation marks, alterations, and citations omitted); *see also* 20 C.F.R. § 404.1527(c)(1)-(6).

### B. Dr. Cheema's Opinions and the ALJ's Failure to Provide "Good Reasons"

#### 1. August 2013 Opinion

On August 1, 2013, Dr. Cheema completed an assessment that rated Musclow's mental ability to engage in work-related activities. Tr. 325-27. He generally opined that Musclow can complete job activities only 20% of the time. *Id.* Dr. Cheema noted that he based this determination on Musclow's psychological evaluations, reports, and opinions, specifically her depression, anxiety, fearfulness, and decreased attention, concentration, and memory. Tr. 326-27. He opined that Musclow is likely to be absent from work or unable to complete an eight-hour workday due to her mental impairments or treatment five or more days per month. Tr. 327. Dr. Cheema indicated that, due to Musclow's mental impairments and limitations, she is unable to obtain and retain work in a competitive setting for a continuous period of at least six months. *Id.*

The ALJ summarized Dr. Cheema's August 2013 opinion and afforded it "little weight" because Dr. Cheema "opined severe limitations[,] however, his treatment notes, from appointments only about every two months, indicate improvement and a stable mental condition." Tr. 19. The ALJ further explained that Musclow's "mental status examinations have also been within normal limits [except] for an anxious mood." *Id.* (citing Tr. 329-37). The ALJ concluded that Dr. Cheema's opinion "contrasts sharply with his treatment notes, which obviously renders it less persuasive." Tr. 19.

6

When an ALJ declines to give controlling weight to a treating physician's opinion, one of the factors he must consider in determining how much weight it should receive is "the relevant evidence, particularly medical signs and laboratory findings, supporting the opinion." 20 C.F.R. § 404.1527(c)(3). Thus, the Court finds that the ALJ properly discounted Dr. Cheema's August 2013 opinion because he found it unsupported by his treatment notes. Because the Court remands this case for the reasons discussed below, however, the Court notes that an ALJ may be required to "recontact a treating physician to clarify his or her opinion where it contains conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." *Allen v. Colvin*, No. 3:14-CV-1368, 2016 WL 1261103, at *12 (N.D.N.Y. Mar. 30, 2016) (citations and quotation marks omitted); *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998) (holding that "even if the [treating physician's] clinical findings were inadequate, it was the ALJ's duty to seek additional information from [the treating physician] *sua sponte*" based on the ALJ's affirmative duty to develop the record). Here, Dr. Cheema assessed Musclow with severe limitations despite his seemingly ordinary treatment notes. On remand, the ALJ should consider reevaluating Dr. Cheema's August 2013 opinion and contacting Dr. Cheema for clarification of that opinion.

### 2. August 2014 Opinion

On August 21, 2014, Dr. Cheema completed a Monroe County Department of Human Services form that assessed Musclow's psychological ability to work. Tr. 345-48. He indicated that Musclow has a history of depression, anxiety, panic attacks, hopelessness, worthlessness, and crying spells. Tr. 345. Dr. Cheema also noted that Musclow tried multiple antidepressant medications, and that she was taking four different medications without side effects. Tr. 345-46.

Dr. Cheema indicated that Musclow's psychiatric condition has caused occasional hospitalizations or emergency room visits, inappropriate interaction with others, repetitive violent actions toward herself or others, the loss of a job or failure to complete an educational or training program, and interference with daily activities. *Id.* Musclow's most recent mental status examination revealed depression, anxiety, fearfulness, hopelessness, worthlessness, and possible suicidal thoughts. *Id.* Dr. Cheema diagnosed her with depressive and anxiety disorders, financial and psychosocial issues, and a Global Assessment of Functioning ("GAF")[5] score of 48. Tr. 347.

Dr. Cheema opined that Musclow is "moderately limited," *i.e.*, unable to function 10-25% of the time in the following areas:

- following, understanding, and remembering simple instructions and directions;
- performing simple and complex tasks independently;
- maintaining basic standards of hygiene and grooming; and
- performing low stress and simple tasks.

*Id.* Dr. Cheema also opined that Musclow is "very limited," *i.e.*, unable to function 25% or more of the time in the following areas:

- maintaining attention and concentration for rote tasks; and
- regularly attending to a routine and maintaining a schedule.

*Id.* Finally, Dr. Cheema concluded that Musclow would be unable to participate in any activities except treatment or rehabilitation for six months. *Id.*

---

[5] Mental health professionals use GAF scores to rate an individual's level of psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness. *See* Global Assessment of Functioning (GAF) Scale, *available at* https://www.albany.edu/counseling_center/docs/GAF.pdf (last visited April 27, 2018). Musclow's score of 48 indicates that she has "serious symptoms" (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) or "serious impairment in social, occupational, or school functioning" (*e.g.*, no friends, unable to keep a job). *Id.*

The ALJ summarized Dr. Cheema's August 2014 opinion and afforded it "limited weight" because (1) he found that the form contained a "flawed scale," and (2) Musclow's daily activities do not support the opinion. Tr. 19-20.

### a. Flawed Scale

The ALJ rejected Dr. Cheema's August 2014 opinion because he found that the form contained a "flawed scale." Tr. 20. The form that Dr. Cheema completed allowed him to rate Musclow's functional mental limitations on a four category scale: (1) "normal functioning," which means there is no evidence of limitation; (2) "moderately limited," which means the individual cannot function in the designated area 10-25% of the time; (3) "very limited," which means the individual cannot function in the designated area 25% or more of the time; and (4) "insufficient data." Tr. 347. In rejecting Dr. Cheema's opinion, the ALJ stated that "moderate is defined as being unable to function 10-25% of the time." Tr. 19-20. The ALJ found this to be a "flawed scale" because "[t]he way the limitations are defined would indicate that any limit[ation] would be disabling." Tr. 20.

If the form opinion confused the ALJ, he should have contacted Dr. Cheema for clarification instead of using that confusion as a reason to reject the opinion entirely. *See Borsching v. Colvin*, 102 F. Supp. 3d 458, 463 (W.D.N.Y. 2015) ("While semantic confusion may have triggered the ALJ's obligation to affirmatively seek out clarifying information, it did not provide legal grounds for rejecting [the treating physician]'s opinion."). Moreover, the ALJ's dissatisfaction with the definition of "moderate" does not explain why he rejected Dr. Cheema's opinion that Musclow was "very limited" in two other areas. *See id.* (finding that the ALJ erred "when he relied on the alleged ambiguity of the word 'fair' to reject the entirety of [the treating physician]'s mental RFC report, which rates [the] plaintiff's ability to interact socially, engage in

9

routine functions, or react to stress as uniformly 'poor'"). Dr. Cheema's opinion that Musclow is "very limited" in her ability to regularly attend to a routine and maintain a schedule, if credited, is very favorable to her disability claim. VE testimony revealed that an individual is unemployable if she needs a 15-minute break for every 45 minutes of work, which is consistent with Dr. Cheema's opinion that Musclow cannot regularly attend to a routine and maintain a schedule 25% or more of the time. Tr. 64, 347.

Musclow is entitled to proper consideration of Dr. Cheema's opinion. It does not appear, however, that the ALJ evaluated the appropriate factors for weighing his opinion, including Dr. Cheema's long treating relationship with Musclow, his psychiatry credentials, or the supporting or contradicting evidence. Accordingly, the Court finds that the ALJ's purported dissatisfaction with the scale provided on Dr. Cheema's form opinion did not constitute a "good reason" to reject that opinion.

### b. Daily Activities

The ALJ also rejected Dr. Cheema's August 2014 opinion because "[t]here is no support that [Musclow] would not be able to do rote tasks, since she admittedly is able to care for herself daily, prepare meals, and do housework." Tr. 20.

It is unclear how these activities refute Dr. Cheema's assessed limitation that Musclow is "very limited" in her ability to maintain attention and concentration for rote tasks. The ALJ did not explain how caring for herself, preparing daily meals, and doing housework demonstrates that Musclow can perform work-related mental activities on a regular and continuing basis, *i.e.*, eight hours a day for five days a week, or an equivalent work schedule. *See* 20 C.F.R. § 404.1545(c); S.S.R. 96-8p, 1996 WL 374184, at *6 (S.S.A. July 2, 1996) ("Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry

10

out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting."). "[T]he ability to perform basic activities of self-care . . . do not by themselves contradict allegations of disability," *Miller v. Colvin*, 122 F. Supp. 3d 23, 29 (W.D.N.Y. 2015) (citation and quotation marks omitted), and the Second Circuit has "stated on numerous occasions" that the claimant "need not be an invalid" to be disabled under the Social Security Act, *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (citation omitted).

Accordingly, the ALJ's finding that Musclow can perform rote work tasks because she can care for herself, prepare meals, and do housework, without more, does not provide Musclow or the Court with a "good reason" for discounting Dr. Cheema's opinion, and does not rely on any of the factors the ALJ must consider when he weighs a treating physician's opinion. Accordingly, the Court finds that the ALJ improperly discounted Dr. Cheema's opinion on this basis.

### D.  Remand for Calculation of Benefits

Musclow asserts that her case should be remanded solely for calculation of benefits because Dr. Cheema's opinion, if afforded controlling weight, establishes that she is disabled.

District courts are authorized to affirm, reverse, or modify the Commissioner's decision "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand for calculation of benefits is appropriate only in cases where the record "provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose." *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980); *see also Butts v. Barnhart*, 388 F.3d 377, 385-86 (2d Cir. 2004). Courts must avoid "contribut[ing] any further to the delay of the determination of [a claimant's] application by remanding for further administrative proceedings" when remand is unnecessary. *Diaz ex rel. E.G. v. Comm'r of Soc. Sec.*, No. 06-CV-530-JTC, 2008 WL 821978, at *8 (W.D.N.Y. Mar. 26, 2008).

Under the treating physician rule, the ALJ must give controlling weight to a treating physician's opinion when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2); *see also Green-Younger*, 335 F.3d at 106.

Here, the record reveals that Dr. Cheema treated Musclow since 2011 and that he examined her about once a month. Tr. 227-52, 328-38. Despite this treating relationship, however, the Court cannot conclude that Dr. Cheema's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1527(c)(2). As an initial matter, Dr. Cheema's handwriting is extremely difficult to read and many of his notes contain little detail. *See* Tr. 227-52, 328-38. Although numerous treatment notes reveal that Musclow suffered from severe anxiety, crying spells, panic attacks, anger, and irritability, other notes indicate that she was doing well, tolerating her medications, and that her mental status examinations revealed fair and intact findings. Tr. 228, 230, 232-33, 236-37, 239, 242-49, 251, 329, 332-37. Additionally, Dr. Cheema's opinions are form opinions that lack supporting relevant evidence, such as medical signs and laboratory findings. Tr. 325-27, 345-48; *see* 20 C.F.R. § 404.1527(c)(3) (the SSA will give more weight to a medical opinion supported by relevant evidence, "particularly medical signs and laboratory findings").

It is also difficult for the Court to evaluate whether Dr. Cheema's opinion is consistent with other substantial evidence in the record because the record contains little evidence of her mental limitations. *See* 20 C.F.R. § 404.1527(c)(2). The record contains roughly 50 pages that document Musclow's mental health, and 43 of those pages are Dr. Cheema's treatment notes and opinions. The other evidence as to Musclow's mental ability to work comes from consultative psychologist Yu-Ying Lin, Ph.D. Tr. 310-13. Although Dr. Lin assessed Musclow with relatively minor

functional limitations, and the ALJ afforded "great weight" to his opinion, "[t]he treating physician rule recognizes that a physician who has a long history with a patient is better positioned to evaluate the patient's disability than a doctor who observes the patient once for the purposes of a disability hearing." *Olejniczak v. Colvin*, 180 F. Supp. 3d 224, 228 (W.D.N.Y. 2016) (quotation marks and citation omitted). This rule is "even more relevant in the context of mental disabilities, which by their nature are best diagnosed over time. Thus, while the ALJ can consider the opinions of [consulting medical sources], absent more compelling evidence[,] their opinions should not be given controlling weight over those of [a treating psychiatrist]." *Id.* (citation omitted) (alterations in original).

Although it is unclear based on the record before the Court whether Dr. Cheema's opinions are entitled to controlling weight and therefore establish that Musclow is disabled, Musclow is still entitled to a proper analysis of Dr. Cheema's opinions and, if appropriate, "good reasons" why those opinions must be rejected. Accordingly, the Court remands this case for further administrative proceedings. On remand, the Court suggests that the ALJ further develop the record as to Musclow's mental RFC by reconsidering Dr. Cheema's opinions or requesting additional information from him, obtaining another consultative psychiatric examination, or seeking a medical expert's opinion.

**CONCLUSION**

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 11) is GRANTED, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 14) is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). *See Curry v. Apfel,* 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: May 2, 2018
Rochester, New York

HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court